G. W. HARDY ET AL. V. J. M. ABBOTT ET AL.

Decided April 6, 1903.

Receiver—Appointment Upon Intervention—Oil Field—Prevention of Fires—Relief by Injunction.

Where the original action was one by injunction and in the nature of abating a nuisance, to enforce regulations to prevent fire agreed on by owners of a petroleum oil field, one of which required owners of lands abutting on drains for waste oil to keep them open, the court was not authorized, on the petition of other owners intervening, to appoint a receiver to collect waste oil from the field and sell it for the benefit of those interested, or to improve the field and lessen the danger from fire, since the action did not involve the title to the waste oil, and new parties and new issues could not be thus made by intervention where the interveners had an adequate remedy at law.

Appeal from the District Court of Jefferson. Tried below before Hon. W. H. Pope.

*W. L. Douglass* and *Hardy & Hardy,* for appellants.

*Jackson, Hightower & Lipscomb,* for appellees.

GARRETT, CHIEF JUSTICE.—This is an appeal from an interlocutory order of the judge of the Fifty-eighth Judicial District appointing a receiver. On September 28, 1901, George W. Carroll filed a petition in the District Court for the Fifty-eighth Judicial District against the J. M. Guffey Petroleum Company and many others, resident citizens of Jefferson County, "engaged in the business of producing petroleum in said county," showing that there was situated in Jefferson County, on Spindle Top Heights, a parcel of about 200 acres of land underlying which, at about the depth of 1000 feet, there was a great volume of inflammable oil and gas easily ignited when exposed by the dropping of a match or lighted cigarette, or cigar, or ashes from a pipe, or coming in contact with steam pipes or cook stoves, boiler furnaces, or fire of any kind. That in drilling for the oil both oil and gas escape in great quantities, the gas filling the air at times for many thousand cubic yards around, and the oil, by force of natural pressure exerted upon it, rises through the opening made by the drilling of wells in great quantity to the height of from 75 to 200 feet above the surface of the earth, pouring upon the ground a flood of inflammable matter at the rate of from 30,000 to 80,000 barrels a day. The land is in part flat and badly

drained. Many wells had already been drilled and the ground upon which the defendants were operating and that owned by plaintiff was saturated with oil and covered with numerous pools of oil, rendering danger by fire imminent. It was averred that a committee of fifteen, the names of whom were set out, had been appointed by the 100 or more owners of said land, and that at a meeting of said owners said committee had been unanimously authorized to draft and enforce rules for the protection of said oil field against fire. That said committee had appointed and employed George A. Hill as inspector, to act peaceably in the enforcement of such rules by protest against their infraction. The petition then set out a number of rules which had been made by said committee, which plaintiff averred were reasonable and such as were suggested by practical oil men operating in the field who were themselves willingly governed by them. One of said rules requires that "all landowners whose property abuts on the ditches cut for drainage of waste oil shall take the utmost precaution to keep the same open and unobstructed." Plaintiff set out the description of the land owned by him, and averred that it would be destroyed as an oil field in the event of a general conflagration in said field. It was alleged that the defendants were severally owners or lessees of the field so far as developed, and had drilled and completed producing wells, and were about to drill such wells in said field and near the land owned by plaintiff; and that said defendants had at divers times violated and were violating the rules formed for the protection of the field, and plaintiff feared they would further disregard them. It was averred that the danger from fire was absolutely beyond estimate, and that it threatened both plaintiff and the public; and the damage therefrom would be irreparable in its nature. A writ of injunction was asked for restraining the defendants, their agents and employes, from violating said rules, and requesting the appointment of the inspector as a special bailiff for the enforcement of such order and to report infraction thereof to the court. A writ of injunction was granted as prayed for, conditioned on the execution by the plaintiff of a bond in the sum of $500. The writ was issued and service thereof was accepted by a number of the defendants. George A. Hill, chairman of the safety committee, was appointed inspector.

First and second amendments of the petition were afterwards filed and modifications of the injunction were made by the court, and the cause was retained on the docket for the purpose of enforcing the observance of the rules adopted by the owners of wells in the oil field as above set out, and various orders of the court were made for that purpose until January 17, 1903, when the plaintiff filed a motion in the cause stating that he did not desire to prosecute the suit any longer, and asked the court to discontinue the same and dismiss it at his cost. On January 27, 1903, before any action was taken by the court on said motion, one Marion A. Fell filed a plea of intervention in the cause, adopting the allegations of the plaintiff's petitions and making other amendments to show the necessity thereof, prayed that the injunction

be continued in force and that the streets in the oil field be opened and repaired, and for general and special relief. This petition of intervention purported to be the Empire, etc., Company and others, including the said Marion A. Fell, but it is unsigned and is not sworn to except by the said Fell. On January 28, 1903, the court entered an order in which the intervention of "certain parties," not naming them, was recognized and dismissed the cause as to the said George W. Carroll without prejudice to "the rights of the several interveners to prosecute the same in their own behalf." No bond was executed by the said Fell, nor is there any recognition of the intervention except in the order permitting Carroll to take a nonsuit as above set out.

On the 27th day of January, 1903, the court ordered George A. Hill to make a report of the sales of the waste oil taken from Spindle Top by virtue of his position as chairman of the safety committee, and thereafter the court removed the said Hill from the office of chairman and inspector, as he was called, and appointed J. Malley Eastham in his stead, the following recitals being contained in the order:

"What is known as Spindle Top oil field is hereby placed under his control, in so far as the protection of said oil field is concerned, from fire, waste or any character of loss or destruction, and the said Eastham will proceed forthwith to collect the waste oil in said field by establishing and maintaining ditches, drains and reservoirs with pools and tanks to store said oil, and all persons are enjoined from taking the waste oil from said field, and the said Eastham is empowered to store said oil and sell same under order of this court; proceeds of sale to be expended under the direction of the court for the purpose of defraying expenses incurred in the protection of said oil field."

On February 7, 1903, the appellees, J. M. Abbott and Ben Andrews, who previously had not been parties to the suit, filed in said cause a petition complaining of the appellants and alleging that the oil wasted from the wells, pipe lines and tanks in this oil field had become very valuable; that they were the owners of oil on said field and had an interest in said waste oil; that the waste oil of the various well owners on the field became commingled, and prayed for and obtained an order restraining the owners from allowing waste oil to accumulate on their premises, and placing all the waste oil on said Spindle Top field in the hands of a receiver, and appointing J. Malley Eastham as such receiver, authorizing him to collect and hold all of the waste oil on said field.

A motion had been made by John Woolridge for leave to be permitted to take oil from a certain part of said oil field, and this had been granted by the court. After granting said order last named the court had entered a rule to show cause why same should not be vacated, and this rule was pending and still undisposed of when the order appointing a receiver herein was made, the last being the order complained of by appellants which placed all of the waste oil on the entire field in the custody of a receiver of the court.

The appellants, who were owners of the waste oil from a number of

the wells, excepted to the petition of intervention and to the appointment of a receiver because the original suit did not involve the title to the waste oil or any kind of property, and new parties and new issues could not be injected in the case by the interveners.

The suit was brought plainly as a suit for the abatement of a nuisance, and it is very questionable whether the court had any jurisdiction to extend the relief prayed for, but conceding that it had, the appellees, as the owners of waste oil in the field, intervened for the purpose of recovering a share of the oil that would become waste oil, and asked that a receiver be appointed not for the purpose of taking charge of oil that had already escaped from the wells of the owners, but to take charge of such as might thereafter accumulate. It is true that the appellees alleged that the waste oil lying in the field amounted to probably 3000 barrels of the value of $1500, but the purpose of the intervention was to appoint a receiver to collect the oil that might thereafter escape for the purpose of sale and distribution among those interested therein as their interest might thereafter be made to appear, "or disposed of by the consent of all parties in improving the condition of said roads and driveways and in lessening the dangers from fire to property in said oil field." The obvious purpose of the intervention was to open up and maintain a receivership to last for an indefinite time in aid of a suit that does not seek or pray for any final relief. It is not shown by the petition that the owners of the wells can not in obedience to the injunction so ditch their premises and drain from the field the oil escaping from them as to make it unnecessary to maintain a receivership for that purpose. If the jurisdiction of the district court is doubtful in the suit to maintain a set of police rules by injunction, it would seem of much more doubtful jurisdiction for it to reach out its arm and with a receivership grasp property to defray the expenses of enforcing such rules although the property seized might be denominated waste and derelict property. No proper ground for intervention is shown. The question of title and ownership of waste oil can not be brought into the suit. The law furnishes an adequate remedy to the appellees to determine their right of ownership. Stansell v. Fleming, 81 Texas, 297; Whitman v. Willis, 51 Texas, 424; Burditt v. Glasscock, 25 Texas Supp., 48; Paschal v. Dangerfield, 37 Texas, 275, 299; Townes, Pleading, 208-9.

If the court has improperly taken into custody any property it should rather release its grasp on it than adopt the extreme measure of appointing a receiver.

We think the court erred in such action, and its order is reversed and set aside.

*Reversed and set aside.*